## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

```
                              )
                              )
In re WIRELESS TELEPHONE      )          MDL-1521
911 CALLS LITIGATION          )          03 C 2597
                              )
                              )
```

### MEMORANDUM OPINION

Before the court is the motion of defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") to compel arbitration and to stay these proceedings.  For the reasons explained below, the motion is denied.

### DISCUSSION

In this multidistrict litigation, plaintiffs contend that the wireless telephones manufactured and sold by defendants fail to comply with the Second Report and Order of the Federal Communications Commission ("FCC") concerning the revision of the FCC's rules to ensure compatibility with Enhanced 911 emergency calling systems.[1]  The background and procedural history of this litigation is set forth in our Memorandum Opinion of June 3, 2005 and will not be repeated here.

---

[1]  In re Revision of the Commission's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Systems, 14 F.C.C.R. 10954 (1999) ("Second Report and Order").

Verizon, one of the "carrier" defendants, has filed a motion to compel arbitration of plaintiffs' claims against it and stay these proceedings as against Verizon. The motion is based on the arbitration clauses contained in the service agreements governing the relationship between Verizon and four of the six plaintiffs whose claims are based on phones sold or service provided by Verizon. Those four plaintiffs are Christina Nguyen, Jed Becker, Donna Clarke, and Advanced Systems Integration, Inc. ("ASI"). Verizon has been unable to locate the service agreements of the remaining two Verizon plaintiffs, Alissa Liff and Stephen Hubbard. With respect to those plaintiffs, Verizon submits the declaration of Carline Hill, a Verizon Advertising Manager, who states that all Verizon customer service agreements since December 2000 have contained some type of mandatory arbitration clause. In their responses to discovery requests, Liff and Hubbard indicated that they purchased their phones and service in 2001 and 2002. Therefore, Hill states, Liff and Hubbard would have signed arbitration agreements containing mandatory arbitration clauses similar to those of the four other Verizon plaintiffs.

The arbitration clauses contained in the "Customer Agreements" of plaintiffs Nguyen, Becker and Clarke and the "Cellular Service Agreement" of plaintiff ASI are all very similar. (No party contends that there are any significant differences among the clauses.) The clauses provide in relevant part that Verizon and

the plaintiff agree to "arbitrate" or to "settle disputes only by arbitration" to the fullest extent permitted or provided by law, and that "any controversy or claim arising out of or relating to" the agreement or any product provided under or in connection with the agreement will be settled by one or more neutral arbitrators on an "individual" basis (or, in the case of ASI, "independent arbitration involving a neutral arbitrator"). (Motion to Compel Arbitration, Exs. 4, 8, 9, 12.)

Verizon argues that the Federal Arbitration Act[2] compels the arbitration of plaintiffs' claims because the parties have agreed to the mandatory arbitration of all disputes arising out of or relating to their contractual relationship, and plaintiffs' claims arise from or relate to products--phones--provided by Verizon under or in connection with the contracts.

Plaintiffs present four arguments in response: (1) Verizon has waived any arbitration rights it may have had; (2) the arbitration clauses in the agreements are unconscionable and therefore unenforceable; (3) certain of plaintiffs' claims are inarbitrable

---

[2] The Federal Arbitration Act provides that a "written provision in . . . a contract . . . to settle by arbitration" any future controversy arising out of such contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party can be compelled to arbitrate only those matters that it has agreed to submit to arbitration. See James v. McDonald's Corp., 417 F.3d 672, 677 (7th Cir. 2005).

as a matter of law; and (4) Verizon's request for a stay is
improper.[3]

We begin with plaintiffs' argument that Verizon waived its
right to arbitrate by actively litigating the case in this court
for six months before filing the instant motion. "Courts may
refuse to enforce arbitration agreements on a number of grounds,
and federal courts have consistently held that among those grounds
is waiver of the right to arbitrate." St. Mary's Med. Ctr. of
Evansville, Inc. v. Disco Aluminum Prods. Co., 969 F.2d 585, 587
(7th Cir. 1992). "Such a waiver can be implied as well as
express." Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry,
Inc., 50 F.3d 388, 390 (7th Cir. 1995). "Courts must examine the
totality of the circumstances and determine whether based on all
the circumstances, the party against whom the waiver is to be
enforced has acted inconsistently with the right to arbitrate.
Although several factors may be considered in determining waiver,
diligence or the lack thereof should weigh heavily in the decision
. . . ." Ernst & Young LLP v. Baker O'Neal Holdings, Inc., 304
F.3d 753, 756 (7th Cir. 2002) (quotation and citations omitted).

---

[3]/ After Verizon filed its reply, plaintiffs filed a surreply (without
prior leave of court and apparently without requesting leave to file the surreply
instanter). Thereafter, the court received correspondence from Verizon
requesting that plaintiffs' surreply be stricken. The court has read and
considered both submissions, but neither the surreply nor Verizon's letter
discusses the waiver issue, which is the only issue that we find necessary to
address, see infra. Therefore, Verizon's request to strike plaintiffs' surreply
is denied as moot. Plaintiffs are reminded that they must seek prior leave of
court before filing surreplies and the like.

We ask whether the party did all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration. See id. Although prejudice to the party asserting waiver is a relevant factor for the court to consider, it is not necessary for that party to show that it would be prejudiced were a stay to be granted and arbitration ensue. See St. Mary's, 969 F.2d at 590; Cabinetree, 50 F.3d at 390.

Plaintiffs contend that "Verizon vigorously invoked the judicial process in an attempt to obtain a favorable resolution of plaintiffs' claims against it," Opposition at 2, and they point to four instances of Verizon's participation in this forum since Verizon was first named as a defendant in plaintiffs' Consolidated Amended Complaint of October 15, 2004 and served with that complaint on October 18, 2004. First, on October 19, 2004, Verizon joined in defendants' motion for partial summary judgment (the motion that we suggested defendants file based on the FCC's decision, using the phrase "partial summary judgment" as shorthand for a pretrial order to the effect that the FCC's decision regarding the 17-Second Rule would be the law of the case). Second, on November 10, 2004, Verizon's counsel filed the carrier defendants' motion to dismiss plaintiffs' claims against Verizon, Sprint, and AT & T. Third, on the same date, Verizon joined in defendants' separate motion to dismiss plaintiffs' claims. Fourth,

Verizon joined the other defendants in propounding the Second Set of Interrogatories to plaintiffs on January 27, 2005, to which plaintiffs responded on March 15, 2005.[4]  In plaintiffs' view, waiver can be inferred from these actions, taken together with the six months that Verizon waited to file its motion to compel arbitration.

We agree with plaintiffs that considering these circumstances, Verizon has waived its right to arbitrate.  Verizon's characterization of its participation in this litgation as "minimal" is incorrect.  Most significant is the fact that Verizon filed its own dispositive motion on behalf of the carrier defendants that went to the merits of plaintiffs' entire case against the carriers.  (One of Verizon's contentions, among others, was that the FCC's Second Report and Order applies only to the manufacturer defendants and not to the carriers.)  The Seventh Circuit has emphasized that "[s]ubmitting a case to the district court for decision is not consistent with a desire to arbitrate." St. Mary's, 969 F.2d at 589.

Verizon points out that the Seventh Circuit has observed that "a party does not waive its right to arbitrate merely by filing a motion to dismiss," quoting Sharif v. Wellness International Network, Ltd., 376 F.3d 720, 726 (7th Cir. 2004).  Verizon,

---

[4]  We would add another instance of Verizon's participation in this litigation.  On April 6, 2005, Verizon's counsel actively participated in oral argument before the court regarding discovery issues.

however, did more than file a single motion to dismiss: it joined in the motion for partial summary judgment and thus tried to obtain the benefit of the FCC's ruling as the law of the case; it joined in the other defendants' separate motion to dismiss; and it propounded written discovery and participated in oral argument concerning discovery matters.

Verizon argues that this case can be distinguished from other cases in which parties invoked their arbitration rights only after an adverse ruling in that Verizon filed its motion to compel arbitration before we issued our ruling on its motions on the merits.  We are unpersuaded.  Verizon clearly did not do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration.  Verizon's explanation for the delay in invoking its arbitration rights is that it was "searching its records and weighing its options."  (Reply at 5.)  We have noted that Verizon has submitted the declaration of one of its employees, who states that all customer agreements since late 2000 contained some type of mandatory arbitration clause.  Surely this fact was well-known to Verizon at the time it was served with plaintiffs' complaint. Verizon did not have to do a "records search" to discover its right to arbitrate.  And as for "weighing its options," the Seventh Circuit has noted that this is the "worst possible reason for delay."  <u>Cabinetree</u>, 50 F.3d at 391.  "It amounts to saying that [a

party] wanted to see how the case was going in federal district court before deciding whether it would better off there or in arbitration.  It wanted to play heads I win, tails you lose." <u>Id.</u>

It is doubtful that plaintiffs would be greatly prejudiced by a forum change, but that does not alter our conclusion.  Prior to filing its motion to compel arbitration, Verizon extensively participated in this litigation, and it failed to act diligently to make the earliest possible determination of whether to proceed in this forum or by arbitration.  Therefore, Verizon waived its right to arbitrate.

In view of our ruling, it is unnecessary to address the remainder of plaintiffs' arguments in response to Verizon's motion.

<u>**CONCLUSION**</u>

For the foregoing reasons, the motion of Cellco Partnership d/b/a Verizon Wireless to compel arbitration and to stay these proceedings is denied.


DATE:      October 20, 2005

ENTER:     _____

John F. Grady, United States District Judge